IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSE CROSS, | Case No. 1:16-cv-2003 |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## I. Introduction

Plaintiff Jesse Cross seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

Because the ALJ supported her decision with substantial evidence and correctly applied the applicable law, I recommend that the final decision of the Commissioner be **AFFIRMED**.

## II. Procedural History

Cross filed an application for DIB on March 8, 2013, alleging a disability since May 1, 2012. (Tr. 159) The social security agency denied Cross's application initially (Tr. 115) and upon reconsideration. (Tr. 125) Thereafter, Administrative Law Judge Pamela Loesel ("ALJ") presided over a hearing on November 20, 2014. (Tr. 30-62) In a decision dated January 29,

2015, the ALJ denied Cross's claim. (Tr. 10-29) On August 10, 2016, the Appeals Council declined review of that decision, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Cross instituted this action to challenge the Commissioner's decision.

### III.  Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[1]….

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at

---

[1] "[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## IV. The ALJ's Decision

The ALJ issued a decision on November 13, 2014, finding:

1. Cross last met the insured status requirements of the Social Security Act on December 31, 2017. (Tr. 15)

2. Cross did not engage in substantial gainful activity since May 1, 2012, alleged onset date. (Tr. 15)

3. Through the date last insured, Cross had the following severe impairments: degenerative disc disease, degenerative joint disease, hearing loss, major depressive disorder, adjustment disorder with depressed mood, post-traumatic stress disorder (PTSD), and obesity. (Tr. 15)

4. Cross did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 16)

5. Cross had the residual functional capacity to perform light work as he is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: Cross is unable to

3

climb ladders, ropes or scaffolds, can occasionally stoop and crawl, may frequently climb ramps and stairs, kneel, crouch or reach overhead bilaterally and needs to avoid even moderate exposure to noise due to hearing loss. In addition, Cross is able to perform simple and routine tasks that involve occasional superficial interaction with co-workers, supervisors, and the general public and infrequent changes where the changes can be explained and is able to perform low stress work that does not involve arbitration, negotiation, supervisory responsibilities or responsibility for the safety of others. (Tr. 19)

6. Cross was unable to perform any past relevant work. (Tr. 24)

7. Cross was born on June 30, 1965, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (Tr. 24)

8. Cross has at least a high school education and is able to communicate in English. (Tr. 24)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (Tr. 24)

10. Considering Cross's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the he could have performed. (Tr. 24)

Based on these findings, the ALJ determined that Cross had not been under a disability from May 1, 2012, through the date of the decision. (Tr. 25). Cross challenges the ALJ's decision to rely on the VE's testimony that there were jobs Cross could perform that properly considered the limitations of his RFC. Specifically, he argues that the jobs the VE identified each had inherent noise levels above the limitations of the RFC and the ALJ did not resolve this conflict.

V. **Relevant Evidence**

The ALJ determined that Cross had a number of severe impairments including hearing loss. (Tr. 15) The ALJ further found that Cross had the residual functional capacity ("RFC") to perform light work with several non-exertional limitations including that Cross needed "to avoid even moderate exposure to noise due to hearing loss." (Tr. 19) Cross does not object to the

4

RFC. Rather, the sole issue before this court is whether the ALJ appropriately relied on vocational expert testimony that he could perform other work when, according to Cross, each of the jobs identified by the vocational expert involved moderate exposure to noise. Because of the narrow, legal issue presented, it is not necessary to provide a detailed review of the medical evidence or Cross's testimony. Thus, I will only summarize the relevant portion of the VE's testimony.

Vocational Expert Mark Anderson ("VE") testified at Cross's November 20, 2014, hearing. (Tr. 53-61) The ALJ asked the VE if a hypothetical individual of Cross's same age, education, and employment experience could perform Cross's past work with the following limitations: the person could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk for six hours in an eight hour workday; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop and crawl; frequently kneel and crouch; with limited overhead reaching bilaterally to frequent; limited hearing bilaterally such that the individual must avoid "even moderate exposure to noise [because] loud noises would cause worsening of hearing loss. It would be difficult to hear with loud noises;" could perform simple, routine tasks consistent with unskilled work; with occasional superficial interaction of a short duration for a specific purpose with coworkers, supervisors, and the general public; and could perform work with infrequent change where those changes can be explained. (Tr. 54-55) The VE replied that the hypothetical individual could not perform Cross's past work. (Tr. 55-56) The ALJ then asked if there were other jobs that the hypothetical individual could perform. (Tr. 57-58) The VE identified three representative jobs: (1) an assembler of electrical accessories (DOT 729.687-010); (2) an assembler of small products (DOT 739-687-030); and (3) a mail

5

clerk (DOT 209.687-026). (Tr. 56) The VE also stated that there would be additional jobs beyond the three mentioned. (Id.)

The ALJ then asked:

Is the testimony then that you've provided consistent with the information in the Dictionary of Occupational Titles and its companion publication, Selected Characteristics of Occupations defined in the revised DOT?

(Tr. 60) The VE responded, "Yes" and advised the ALJ that it was supplemented where noted throughout the testimony.[2] (Id.) The ALJ then provided Cross's counsel the opportunity to ask questions. (Id.) Cross's counsel asked a few follow up questions about a sit/stand options and then stated he had nothing further. (Tr. 61)

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether substantial evidence in the record supported the ALJ's findings of fact and whether the ALJ correctly applied the appropriate legal standards. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of*

---

[2] There were several occasions during in the VE's testimony when he identified other sources of information. For example, the Journal of Forensic Vocational Analysis. (Tr. 57) However, the VE's supplemental evidence is not relevant to the issues raised in this appeal.

*Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The court must also determine whether the Commissioner applied proper legal standards. If not, the court must reverse the Commissioner's decision, unless the error of law is harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

    **B.**    **The VE's Testimony Provided Substantial Evidence for Step Five Determination Despite Conflict with the DOT**

In his sole allegation of error, Cross alleges that the ALJ relied upon flawed VE testimony that the jobs he identified plaintiff could perform were consistent with Cross' RFC and that his opinions were consistent with the job requirements of the *Dictionary of Occupational*

7

Titles ("DOT").  ECF Doc. No. 17, Page ID# 1655-66.  Specifically, Cross argues that the RFC limitation that he must "avoid even moderate exposure to noise" prevents him from performing the three jobs identified by the VE (electrical accessories assembler, small products assembler, and mail clerk) because, according to the DOT, the jobs each involve moderate noise exposure. [3] Id.  Cross maintains that SSR 00-4p requires the ALJ to resolve the aforementioned conflict before relying on the VE's testimony.  Id.

Social Security Ruling 00–4p provides that an ALJ must elicit a reasonable explanation from a VE when there is an apparent conflict between the VE's testimony and the DOT:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

S.S.R. 00–4p, 2000 WL 1898704, at *2 (2000).  The Sixth Circuit interprets SSR 00-4p as requiring that the ALJ question the VE as to whether there is a conflict between the VE's testimony and the DOT.  *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 601 (6th Cir.2009). Neither the testimony of a VE nor the occupational descriptions in the *DOT* necessarily trump the other.  *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008)*; Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir.2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security

---

[3] The Commissioner admits that the three identified jobs identified by the VE all involve moderate levels of noise under the DOT.  ECF Doc. No. 19, Page ID# 1677.  *See also* DICOT 729.687-010, 1991 WL 679722 (1991) (Assembler, Electrical Accessories I); DICOT 739.687-030, 1991 WL 680180 (1991) (Assembler, Small Products II); DICOT 209.687-026, 1991 WL 671813 (1991) (Mail Clerk).

regulations do not obligate them to rely on the Dictionary's classifications"). However, if there appears to be a conflict with the *DOT*, the ALJ must obtain a "reasonable explanation" for the apparent conflict. *Id*. The Sixth Circuit has consistently held that where a VE asserts that his testimony is not in conflict with the DOT, the ALJ may rely on that testimony and is under no obligation to investigate the accuracy of said testimony. *Id*.; *see also Kyle v. Comm'r of Soc. Sec.,* 609 F.3d 847, 858 (6th Cir.2010) ("[E]ven if a conflict existed, the ALJ inquired properly if the VE's testimony was consistent with the DOT and was given a response in the affirmative. Therefore, the ALJ met her obligation under SSR 00–4p and there was no error relying on the positions the VE offered."); *Kyle v. Comm'r of Soc. Sec*., 609 F.3d 847, 858 (6th Cir. 2010) ("even if a conflict existed, the ALJ inquired properly if the VE's testimony was consistent with the DOT and was given a response in the affirmative. Therefore, the ALJ met her obligation under SSR 00–4p and there was no error relying on the positions the VE offered."); *Beinlich v. Comm'r of Soc. Sec.,* 345 F. App'x 163, 168 (6th Cir. 2009) (Finding that the ALJ fulfilled his duty under SSR 00-4p by inquiring into any discrepancies between the VE's testimony and the DOT); *Martin v. Comm'r of Soc. Sec*., 170 F. App'x 369, 374 (6th Cir. 2006) (Noting that the ALJ need not explain how a conflict was resolved under SSR0-4p where the conflict was not brought to the ALJ's attention).

This court has frequently upheld ALJ Step Five determinations despite an actual conflict between the RFC and DOT where the ALJ inquired about conflicts, conflicts were not brought to the ALJ's attention, and the VE testified that no conflicts existed. In *Lewis v. Comm'r of Soc. Sec*., No. 3:12-CV-01720, 2013 WL 5563764, at *33–34 (N.D. Ohio Sept. 30, 2013), Judge Helmick found that although the DOT required higher reasoning levels for the jobs identified by the VE than what was provided for in the RFC, the ALJ satisfied his burden at Step Five because

9

he reasonably relied on the VE's testimony that there was no conflict. Likewise, in *Phillips v. Comm'r of Soc. Sec.,* No. 5:12 CV 2085, 2013 WL 2153286, at *21–22 (N.D. Ohio May 16, 2013), Judge Nugent found that a conflict between frequent reaching and handling in the DOT and occasional reaching in the RFC did not require remand because the VE testified that his answers were consistent with the DOT, the ALJ was not required to inquire further, and claimant's counsel did not bring the discrepancy to the ALJ's attention. Judge Nugent also stated that because "the DOT's job classifications are collective descriptions of occupations that can encompass numerous jobs ... Within occupations ... there may be variations among jobs performed for different employers…It is entirely possible that Plaintiff could perform work as a security guard in a position that requires only occasional reaching and handling." *Id.* (internal citations and quotations omitted). In *Jackson v. Comm'r of Soc. Sec. Admin.,* No. 3:13-CV-2199, 2014 WL 5810488, at *9 (N.D. Ohio Nov. 7, 2014), Magistrate Judge McHargh also upheld the ALJ's Step Five determination despite a conflict between the reaching and handling restrictions contained in the RFC and the DOT requirements for the job. As Judge McHargh explained,

> Plaintiff correctly asserts that the reaching and handling restrictions contained in the RFC do not comport with those set out by the DOT for the job of bench hand. Nevertheless, for a number of reasons, the Court cannot agree that this fact requires remand. First, the ALJ inquired whether the VE's testimony was consistent with the DOT, and the VE stated that it was. (Tr. 37). Additionally, Plaintiff's attorney did not identify the alleged specific discrepancy between the VE's testimony and the DOT that she now raises at the hearing. Nor has Jackson explained how the discrepancy was "apparent" at the hearing such that the ALJ should have noticed, inquired about, and resolved it. Accordingly, there is no basis to conclude that the ALJ failed to properly resolve any conflicts between the VE's testimony and the DOT.

For similar reasons, Judge Lioi found that a conflict between the VE's testimony that a claimant could perform jobs that required occasional stooping/crouching and the DOT's listing that those jobs required frequent stooping/crouching did not require remand. *Dipalma v. Comm'r of Soc.*

*Sec.*, No. 1:14-CV-756, 2015 WL 5559848, at *11–13 (N.D. Ohio Sept. 21, 2015). These cases, and several others, stand for the proposition that once the VE provides that his testimony is consistent with the DOT, and that testimony is not contradicted, the ALJ fulfills her duty under SSR 00-4p and does not err by relying on the VE's testimony as credible evidence of a lack of conflict between his testimony and the DOT. *See also Rivera v. Comm'r of Soc. Sec.,* No. 3:13 CV 772, 2014 WL 4956224, at *17 (N.D. Ohio Sept. 30, 2014)(J. Helmick) ("Despite the language, reasoning, or math levels listed in the DOT, the ALJ could reasonably rely on VE testimony that Plaintiff could perform the jobs because the VE testified there was no conflict between his testimony and the DOT, reliance on the definitional requirements for jobs listed in the DOT is not binding, the range of requirements is not a minimum, but a maximum range, and the ALJ was under no obligation to investigate the accuracy of the VE's testimony beyond the SSR 00–4p inquiry."); *Kuhn v. Comm'r of Soc. Sec.*, No. 3:12 CV 654, 2013 WL 3190697, at *17 (N.D. Ohio June 21, 2013) (M.J. Knepp) "(Because the ALJ asked the VE if her testimony was consistent with the *DOT,* the VE responded that it was, and Plaintiff failed to challenge the VE's identified jobs as inconsistent with the *DOT* despite the opportunity to cross-examine her, the ALJ fulfilled her duty and did not err in accepting the VE's testimony as credible regarding jobs identified for the hypothetical person."); *Heffelfinger v. Astrue*, No. 1:10CV2892, 2012 WL 1004722, at *8 (N.D. Ohio Mar. 23, 2012) ("Because the ALJ specifically asked the VE if her testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform."); *Wagner v. Comm'r of Soc. Sec.*, No. 1:09CV1115, 2010 WL 3036763, at *4 (N.D. Ohio July 15, 2010), *report and recommendation adopted,* No. 1:09CV1115, 2010 WL 3000220 (N.D. Ohio July 30, 2010) (M.J. Gallas) (finding that conflicts between the DOT

and VE testimony involving occasional stooping and frequent stooping and intellectual ability did not require remand because plaintiff's counsel did not bring the conflicts to the ALJ's attention and the ALJ was not required to conduct his or her own investigation of the VE testimony.)[4]

Here, the VE testified that a hypothetical individual with Cross's RFC could perform work as an electrical accessories assembler, a small products assembler, or a mail clerk. (Tr. 56) The ALJ asked the VE if his testimony was consistent with the DOT. (Tr. 60) The VE replied in the affirmative. (Id.) The ALJ then provided Cross's counsel the opportunity to cross-examine the VE. (Id.) Cross's counsel asked several questions about a sit-stand option but did not ask any questions relative to the noise issue. (Tr. 60-61) Thus, the ALJ fulfilled her obligation under SSR 00-4P. "Nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue,* 2008 WL 5351015, at *10 (6th Cir. Dec.19, 2008) (citing *Martin v. Comm'r of Soc. Sec.,* 2006 WL 509393, at *5 (6th Cir. Mar.1, 2006). Here, the conflict was no more apparent to the ALJ than in the numerous cases from this court

---

[4] Notably, there are cases that have found that an unidentified conflict between the DOT and the VE's testimony requires reversal. *See e.g. Austin v. Comm'r of Soc. Sec.*, No. 3:09 CV 723, 2010 WL 1170630, at *3 (N.D. Ohio Mar. 23, 2010) (J. Zouhary)(noting that a conflict with regard to skill level would be reversible error but ultimately upholding the decision under a harmless error analysis because two of the three positions identified by the VE did not conflict with the skill level in the RFC). However, those cases involve conflicts with the VE testimony and regulatory policies or definitions. As SSR 00-4P clearly states, "SSA adjudicators may not rely on evidence provided by a VE, VS, or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." SSR 00-4P at *3. SSR-04P gives the following examples of regulatory policies and definitions: exertional level, skill level, and transferability of skills. Id. This case involves a discrepancy over noise level, which is not defined in the regulations. Thus, those cases and that portion of SSR 00-4P does not apply.

cited above.⁵  Thus, the ALJ could reasonably rely on the VE's testimony to satisfy her burden at Step Five.

## VII. Recommendation

Cross has not demonstrated a basis upon which to reverse or remand the Commissioner's decision. Accordingly, I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. §405(g).

Dated: June 2, 2017

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

---

⁵ Notably, Cross has not made an argument that the conflict should have been apparent on its face to the ALJ. ECF Doc. No. 17, Page ID# 1655-56.